OPINION
Defendant-appellant John H. Clark appeals his conviction and sentence from the Holmes County Court on one count of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and one count of reckless operation in violation of R.C. 4511.20. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 25, 1999, appellant was arrested and charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1), driving with a prohibited blood alcohol content in violation of R.C. 4511.19(A)(3), and reckless operation in violation of R.C. 4511.20. At his arraignment on July 30, 1999, appellant entered a plea of not guilty to all of the charges.
Subsequently, a jury trial commenced on May 18, 2000. The following evidence was adduced at trial.
At approximately 9:30 p.m. on July 25, 1999, Diane Workman was returning from fishing with Randall Cunningham when the vehicle in which they were traveling was run off of the road by a green van. At trial, Workman, who is now known as Diane Cunningham, testified that "[w]e were coming in to town and by the car wash and there was a green van coming at us and I hollered and my husband [Randall Cunningham] swerved and the van ran us off the road." Trial Transcript at 12. After turning around and following the green van in their vehicle, the two observed the van swerving all over the road, crossing the centerline and nearly hitting guard rails.
When the van later stopped at a stop sign, Randall Cunningham used his own vehicle to cut the van off. Both Cunningham and Workman then jumped out of their vehicle. While Cunningham went over to talk to the van's driver, Workman ran to the home of Holmes County Deputy Sheriff Jim Miller, which was approximately 100 yards away. At trial, Workman testified that she knew it was an officer's house since there was a cruiser sitting outside. Workman told the deputy that there was a green van with an intoxicated driver behind his residence that had forced their vehicle off of the roadway. Cunningham testified at trial that the van's driver had slurred speech and smelled of alcohol, causing Cunningham to believe that the driver was drunk.
Deputy Miller, who testified at trial that he was off duty on the evening of July 25, 1999, was wearing a pair of shorts and a T-shirt when Workman knocked on his door. After putting on his bullet proof vest, Deputy Miller exited his home and proceeded towards the van. However, since the van then took off, Deputy Miller next got into the cruiser parked in his driveway and proceeded to follow the van. While doing so, the deputy radioed for back-up assistance and advised the other units in the area that he was in pursuit of a green Dodge Caravan.
Deputy Miller soon lost sight of the green van. However, based on Miller's radio transmission, three other deputies were in the area searching for the van, namely, Deputies McVicker, Erickson and Laurhia. Deputy Erickson located the van at appellant's residence. When Deputy McVicker arrived on the scene and touched the van, he discovered that the vehicle's hood was warm. At trial Deputy McVicker testified that, based on the temperature of the hood, "[i]t appeared to me it [the van] hadn't been parked very long at all, within minutes." Trial Transcript at 76. At the time, appellant was sitting on the front steps of his home. According to Deputy McVicker, appellant's eyes were very glassy, appellant's balance was very unstable and appellant smelled strongly of alcohol. Deputy Erickson also witnessed physical signs of intoxication with respect to appellant. Appellant told Deputy McVicker that he had had a few beers at a friend's house in Millersburg and that he had been home for twenty to twenty five minutes before the deputies arrived. Appellant also told Deputy McVicker that, during such time, he had drank two beers and consumed a sandwich. Upon arriving at the scene, both Workman and Cunningham identified appellant as the driver of the green van. Deputy McVicker subsequently arrested appellant for driving while intoxicated. Appellant's blood alcohol content, which was tested at the jail, was .171 grams per 210 liters of breath. Appellant also was later charged with driving with a prohibited blood alcohol content and reckless operation. After his arrest, a written statement was obtained from appellant.
At the conclusion of the evidence and the end of deliberations, the jury, on May 18, 2000, found appellant guilty of driving under the influence in violation of R.C. 4511.19(A)(1) but not guilty of operating a vehicle with a prohibited alcohol concentration in violation of R.C.4511.19(A)(3). The trial court separately found appellant guilty of the reckless operation charge. Pursuant to an entry filed the same day, appellant was sentenced to 15 days in jail with all but three days suspended and ordered to pay a $575.00 fine plus court costs. In addition, appellant's driver's license was suspended for one year.
It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 I THE TRIAL COURT ERRED BY NOT EXCLUDING THE TESTIMONY OF DEPUTY MILLER.
 II THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS AND FOUND THAT THE DEPUTIES HAD PROBABLE CAUSE TO ARREST APPELLANT.
 III THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW BY UNFAIRLY RESTRICTING DEFENDANT'S CROSS-EXAMINATION OF A STATE WITNESS.
 I
Appellant, in his first assignment of error, contends that the trial court erred in failing to exclude the testimony of Deputy Miller. Appellant specifically contends that Deputy Miller was not competent to testify based on Evid. R. 601(C) and R.C. 4549.16. [1]
Evid. R. 601 states, in relevant part, as follows:
Every person is competent to be a witness except:
 (C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.
Likewise, R.C. 4549.16 provides as follows:
 Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was not wearing a distinctive uniform in accordance with section 4549.15 of the Revised Code.
R.C. 4549.14 contains identical language with regard to driving a marked police vehicle.[2]
There is no dispute that Deputy Miller was off duty when Diane Workman knocked on his door and that he was not in uniform when he exited his home and got into his marked Sheriff's cruiser to pursue appellant. Thus, the issue is whether Deputy Miller's actions placed him in a status of "on duty" exclusively or for the main purpose of enforcing motor vehicle or traffic laws as contemplated by R.C. 4549.16 and Evid. R. 601(C). The phrase "on duty" exclusively or for the main purpose of enforcing motor vehicle or traffic laws in R.C. 4549.14 and in Evid. R. 601(C) refers to the officer's main purpose for his whole period ofduty, and not to his duty during the apprehension and arrest of the suspect. State v. Huth (1986), 24 Ohio St.3d 114, syllabus. R.C.4549.14, (which section corresponds to the language of Evid. R. 601(C)) was enacted to provide uniformity in traffic control, and to curb the speed traps that were operated by police officers in unmarked cars. Id. at 115. The Tenth District Court of Appeals, in construing R.C. 4549.14[3], found:
 "One of the safety concerns addressed by the General Assembly in enacting the statutes was the hazard to members of the public that inevitably would result should a police officer, not clearly identified as such, confront a driver and attempt to require him to follow the officer's instructions. It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring police officers on traffic duty to be identified clearly."
Columbus v. Murchison (1984), 21 Ohio App.3d 75, 76.
Upon our review of the record, we find that the trial court did not err in concluding that Deputy Miller was off duty and in permitting Deputy Miller to testify at the hearing and the trial in this matter. Under the circumstances of this case, Deputy Miller was not enforcing traffic laws as contemplated by the above statutes and rule. The deputy did not force appellant's vehicle off of the road using an unmarked vehicle, but rather approached appellant's vehicle when it was already stopped. See State v.Butler (1990), 77 Ohio App.3d 143. Moreover, Deputy Miller, who did not arrest appellant and who was in a marked vehicle, was not operating a speed trap or lying-in-wait for traffic offenders. See State v. Prater
(May 3, 1996), Richland App. No. 95-CA-85., unreported; Butler, supra. Since the dangers that the legislature sought to avoid by enacting R.C.4549.16 (and 4549.14) were not present here, ruling that Deputy Miller was incompetent to testify as a witness in this case would not further the legislative intent, which was to curb the use of speed traps and to prevent the "unfortunate circumstances should a frightened motorist believe that he was being forced on the road by a stranger." SeeMurchison, supra.
In short, we find that Deputy Miller was not "on duty for the exclusive or main purpose of enforcing [traffic] laws" as the phrase is used in R.C. 4549.16 and Evid. R. 601(C). The trial court, therefore, did not err in finding that Deputy Miller was competent to testify.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, argues that the trial court erred in denying appellant's Motion to Suppress. On September 17, 1999, appellant filed a Motion to Suppress evidence, alleging that the warrantless arrest of appellant was illegal. Appellant specifically sought to suppress all evidence obtained from the warrantless arrest of appellant and search of his property including but not limited to the following:
 Any and all results of field sobriety tests and/or breathalyzer tests administered to Defendant.[4]
 Observations and opinions of the law enforcement officer(s) who arrested the Defendant.
 Any and all evidence obtained from the residence of John H. Clark, including but not limited to statements made by Defendant John H. Clark.
 Any and all observations and opinions of Deputy Jim Miller.
 Any and all statements or testimonies obtained from lay witnesses Randall J. Cunningham and Diane Workman.
In his motion, appellant argued, in part, that the warrantless arrest of appellant violated R.C. 2935.03 and that the deputies "did not observe any activity by Defendant Clark that could form the basis for his warrantless arrest." Following a suppression hearing, the trial court denied appellant's motion pursuant to a Judgment Entry filed on March 16, 2000.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623,627, and State v. Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Appellant argues that the trial court erred in denying appellant's Motion to Suppress since appellant's warrantless arres for driving while intoxicated in violation of R.C. 4511.19(A)(1) violated R.C.2935.03. Appellant further argues that Deputy McVicker lacked probable cause to arrest appellant since the information he possessed regarding appellant's operation of the van constituted hearsay or secondhand evidence.
R.C. 2935.03(A)(1) states that "A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, . . . shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision, . . . and a municipal corporation located within its territorial jurisdiction, . . . a law of this state, an ordinance of a municipal corporation, or a resolution of a township." (Emphasis added). Pursuant to R.C. 2935.03(A), an officer is prohibited from arresting a person for a misdemeanor offense on the basis of hearsay alone unless such offense involves violence, domestic violence, theft or illegal drugs. State v. Stacy (1983), 9 Ohio App.3d 55, 57.
Thus, generally, pursuant to R.C. 2935.03(A), an officer may not make a warrantless arrest for a misdemeanor offense unless the offense occurs in the officer's presence. State v. Henderson (1990), 51 Ohio St.3d 54,56. However, by judicial decision, courts in Ohio have held that under certain circumstances, a warrantless arrest for operating a motor vehicle while under the influence of alcohol may be made even though the officer has not viewed the commission of the offense. Xenia v. Manker (1984),18 Ohio App.3d 9, 12, citing Oregon v. Szakovits (1972), 32 Ohio St.2d 271.
In so holding, the Ohio Supreme Court, in the Szakovits case, adopted language from Mentor v. Giordano (1967), 9 Ohio St.2d 140, and set forth certain criteria to consider in determining whether an arrest for DUI may be made even though the officer did not view the commission of the offense. First, the trial court should consider chronology. "A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle * * *." Szakovits at 273, citing Mentor at 146. Second, each DUI case must be decided on its own particular and peculiar facts. Id. Third, "[a]lthough a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle in that condition." Szakovits at 273, citing Mentor at paragraph three of the syllabus.
Based upon the above three factors, the officer must have probable cause to make the arrest. "Probable cause" exists when * * * facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed. `* * * common rumor or report, suspicion, or even strong reason to suspect * * * [is] not adequate * * *' State v. Sampson (1982), 4 Ohio App.3d 287, citing Henry v. UnitedStates (1959), 361 U.S. 98, 101. "What is required for a valid warrantless arrest is not that the officer have absolute knowledge that a misdemeanor is being committed in the sense of possessing evidence sufficient to support a conviction after trial, but, rather, that he be in a position to form a reasonable belief that a misdemeanor is being committed, based upon evidence perceived through his own senses." Statev. Reymann (1989), 55 Ohio App.3d 222, 224, citing Columbus v. Lennear
(1984), 16 Ohio App.3d 466, 468. This exception is applied, for the most part, to arrests for driving under the influence. Reymann, supra.
Evidence flowing from the arrest of a defendant in violation of R.C.2935.03 is not subject to suppression unless the arrest also violated the defendant's constitutional rights. Kettering v. Hollen (1980),64 Ohio St.2d 232, State v. Allen (1981), 2 Ohio App.3d 441.
In applying the criteria set forth in Szakovits and the standard set forth in Reymann for warrantless arrests in DUI cases, we find that, under the surrounding circumstances, of the case sub judice Deputy McVicker had probable cause to make a warrantless arrest of appellant for driving under the influence even though he did not view appellant driving while intoxicated [5]. Rather, Deputy McVicker relied upon Deputy Miller's radio broadcast for information as to the identity of the van. However, independent of the hearsay or secondhand evidence from Deputy Miller, we find that Deputy McVicker personally observed facts which would give him reason to believe that appellant was intoxicated. When Deputy McVicker spoke with appellant at appellant's home, appellant told the officer that appellant "had drank a couple of beers" at a friend's house in Millersburg and admitted that he had been driving the van earlier that evening. Transcript of October 4, 1999, suppression hearing at 45. The conversation, according to Deputy McVicker, took place near appellant's van. When Deputy McVicker arrived at appellant's residence, the officer had determined that the hood of appellant's van was "very warm." Transcript of October 4, 1999, hearing at 52. From such evidence, McVicker could reasonably conclude that appellant had been operating his vehicle shortly before Deputy McVicker arrived. Furthermore, evidence is contained in the record which establishes beyond a reasonable doubt that appellant was intoxicated. At the suppression hearing, Deputy McVicker testified that when he arrived on the scene, appellant smelled strongly of alcohol, that appellant's eyes were glassy, and that appellant was unstable on his feet and "somewhat argumentative." Id at 47.
Based on the foregoing, even though he did not personally observe the same, Deputy McVicker had probable cause to arrest appellant for driving while intoxicated, a misdemeanor, based on his own observations. Deputy McVicker's warrantless arrest of appellant for driving under the influence was, therefore, not improper. Since there was probable cause supporting appellant's arrest, we find that the trial court did not err in denying appellant's Motion to Suppress.
Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, contends that the trial court denied appellant due process of law and a fair trial when it restricted appellant's cross-examination of Deputy Miller. At trial, appellant attempted to cross-examine Deputy Miller about his abrupt resignation from his employment with the Holmes County Sheriff's Department approximately a week before the trial in this matter. While appellant argued that such issue was relevant as to Deputy Miller's credibility, the trial court disagreed and sustained appellee's objection to appellant's questioning.
Evid. R. 611(B) states that cross-examination "shall be permitted on all relevant matters and matters affecting credibility". Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
We find that the trial court did not abuse its discretion in refusing to allow appellant to cross-examine Deputy Miller as to the reasons for his resignation since such decision was not arbitrary, unconscionable or unreasonable. Since there is no evidence in the record as to what Deputy Miller would have testified had he been directed to answer appellant's question as to the reason for his resignation, it is not clear to this Court why Deputy Miller's reason for resigning was relevant. As appellee notes in its brief, appellant, although not required to do so, did not proffer anything to the trial court to help convince the trial court that the question could have been relevant. We find, therefore, that the trial court's ruling did not constitute any abuse of discretion.
Appellant's third assignment of error is, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Holmes County Court is affirmed. Costs to appellant.
Edwards, P.J. Hoffman, J. and Boggins, J. concurs.
[1] Appellant's trial counsel, on September 17, 1999, had filed a Motion in Limine asking that Deputy Miller's testimony, at any hearing or trial, be prohibited. While at trial, counsel renewed his motion, the same was overruled by the trial court. See Trial Transcript at 33.
[2] R.C. 4549.14 states, in relevant part, as follows:
 Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.
[3] As is stated above, R.C. 4549.16 contains identical language to R.C. 4549.14 with regard to wearing a police uniform.
[4] As is stated above, following a jury trial, appellant was acquitted of the charge of driving with a prohibited blood alcohol content.
[5] At the suppression hearing, Deputy McVicker testified that he had, after receiving the radio broadcast, observed appellant's van on State Route 60, but that he didn't observe any illegal or unlawful operation of the same.